May it please the court. My name is Harvey P. Sackett. I represent Bobby J. Pugh, plaintiff appellant in this matter. I'm adjourned at the council table by Daniella Marschalletta. I intend to preserve two minutes for rebuttal. And could you move your mic just a little bit up? This is a hard room acoustically. My apologies, Your Honor. No, no, it's fine. No, it's our apologies. We didn't design it right. This case involves Pugh's claim for social security disability benefits. A recital of the protracted procedural history, I believe, is essential to understanding the issues before the court. I think we do have the history in hand. We've reviewed the briefs. I guess the question I want to start with, if you don't mind, is you contend that the district court really should have conducted a de novo review of the ALJ finding. Is that true? That's correct, Your Honor. Instead of saying, well, I sent it back for procedural reasons, you cured the procedural defects, and that's all I'm going to look at. That's correct. In reading Judge Chesney's decision, it struck me, though, that if she didn't really outright look at the case de novo, she at least took a peek at it and said, well, I don't think there's anything different here. Is that the way you read that or not? I'm hesitating because I'm kind of stuck on the word peek. I'm not being critical, Your Honor. No, no. Even if I were to say that she took a peek at it, and I'm not going to split hairs with you, sir, I would say that taking a peek respectfully is not adequate. I believe that Judge Chesney not only had to review whether or not the administrative law judge upon remand had complied with her order from 2004, but additionally, whether or not, given the fact the ALJ made new findings, issued a completely new decision, having taken additional evidence, both testimonial and otherwise, whether or not she addressed the entirety of his decision. Clearly, she did not do that. Well, the question really is whether she needed to. That is, if, in fact, she had a specific reason for sending it back, the mandate was limited. You may only do X and Y and send it back here. If the ALJ went further, that's a void act. There's no jurisdiction that went down there. If the mandate acts the way it would in the district court when we send matters back. So I think that she then concluded that it didn't do any harm anyway because we've decided on a higher standard anyway. What's wrong with doing that? Why go through the whole process again if the mandate rule applies? Your question is well taken, Judge Wells, if I could speak to that. I don't necessarily agree with the premise of your question. There are several things why I come to that conclusion. Number one, the mandate directed what the administrative law judge had to do. Let's assume for the sake of discussion without conceding the point that she said to the administrative law judge, I only want you to review these two issues. You are not to look at anything else. Firstly, the order didn't say that. But above and beyond that, the fact is that the agency waived issue preclusion. What the administrative law judge should have done if that were the case, he should have said, I am only going to address those two issues referred to in the mandate. Clearly he did not do that. Correct. He brought in a second vocational expert. Even though the commission keeps referring back to the 2002 vocational expert testimony, the ALJ brought in another vocational expert. He could have said, I'm simply going to adopt the conclusions of the 2002 testimony. Once he brought in a second vocational expert and considered the additional evidence submitted upon remand, in essence he hit a reset button. So the agency waived issue preclusion. Above and beyond that, when the second civil action was filed, I'll come back again to issue preclusion. If there's no power, there's nothing to waive. That is, if the mandate is specific, the district court only granted power to do two things and the rest is void. If that's true, then there's no question about waiving it because it's a question of jurisdiction. Isn't that right? If that's true, and again, respectfully, Judge Wallace, I don't believe with the premise of your point. I believe that the only way that could have happened would have been, A, that the district court clearly said rule on nothing else. Number two, the administrative law judge didn't go beyond the bounds of that and did not issue a new decision, which he did. Number three, the agency, when it filed its answer, had to assert issue preclusion as an affirmative defense. They never did that. And likewise, they're not asserting that in their brief. So respectfully, that's why I take the position it's not necessarily a question of the ALJ's findings being void. I believe they're very much in play. Well, I think there's a couple of alternatives here. I mean, if I take the import of Judge Wallace's question, what he's suggesting is Judge Chesney may have just wiped out what happened below and said, okay, I'm going back to the old opinion. You cured the procedural defects. That's the end of the story, and that's all I'm going to look at. I suppose that's one way of looking at it. The second one is the agency was allowed under its regulations to do a whole de novo review. It did it, and she should have looked at the whole record. The third is, and there may be more, but the third is to say, well, okay, now we've got to send it back down with instructions for the ALJ to obey the mandate in the first place and issue a decision in conformance with that. I gather you're a number two, which is de novo review in the district court. But why does a number three equally plausible? That is, that we would say, okay, the ALJ violated the mandate from the district court, and we send it down to the district court with instructions to tell the ALJ to obey the mandate. It doesn't get you where you want to go, but isn't it equally plausible? I'm struggling having a full understanding of how that would work practically, Your Honor. So if I respectfully could pose a question to you. No, no, no. A rhetorical one, albeit a rhetorical one. Under the third scenario, the case would go back, still go back to the ALJ? Right. I mean, it's unsatisfactory, but it might be procedurally correct, which is it goes back to the district court with instructions to vacate the district court judgment and say, all right, send it back to the ALJ and say with instructions to obey the original mandate. I mean, I think the problem is you cure the procedural error, but it doesn't get to the issues you want to address. I'm just puzzling through this, as I think we all are, procedurally. I would have no problem with that. There are very, very few Ninth Circuit decisions where cases are remanded to the district court. With instructions, yeah. With instructions. And typically these cases all go back to the agency. So I would have no problem if the case went back to the ALJ to comply with the mandate, because I quite frankly think in practical terms it still gets me where I want to go, that I want all the issues adjudicated like they were after the 2005 remand. Okay. Your time is winding down. Are there further questions or do you want to reserve? I'll reserve. Okay. Thank you very much, Your Honors. Your Honor, Jeanne M. Turk for the Commissioner of Social Security. And again, you'll have to speak up in this room if you don't mind. I just heard it was all corked and supposedly promoted a good accuser. It looks nice, but it affects our accusers. Anyway, what I'd like to start out by saying is that the claimant asked the district court to join these two cases, the first 2002 decision and the 2004 decision. So this idea that the district court should not have looked at what went down in the first decision I think is erroneous. I'm struggling a bit, though, procedurally, and you've heard our colloquy. Yes, Your Honor. You know, in a sentencing context, for example, we either send it back for a new resentencing or a limited resentencing. And here Judge Chesney did that equivalent and said, I want you to address these issues. And the ALJ said, OK, I'm going to do the equivalent of a completely new resentencing. Now, when we would get that case on appeal, we'd do one of two things. We'd say the district court violated the mandate and sent it back down for compliance. Or two, OK, we'll take the whole new resentencing. We'll say, well, I guess our order was ambiguous, and we'll consider the whole new appeal with all the issues open. But she took a third option, and I'm not sure she can do that. Well, Your Honor, I would say that Judge Chesney presided over both of those orders and that the district court and Judge Chesney would be in the best position to determine whether that order had been followed. The judge found that correcting the two procedural errors and finding no other cause for remand, that the commissioner's decision should be approved. In terms of violating the mandate, there is a rub. Our policy is that when a case is remanded, the first decision is vacated and a new hearing is held. Let me see if I understand what you just said. You have a policy, and when a United States federal district court says, I want you to do A, you say, no, we have a policy. We can violate what the federal district court did and do whatever we want to do. Is that the position of the commissioners? No, Your Honor. I didn't finish what I was saying, that mindful, mindful of any district court remand order. So what the ALJ did was try to comply with both. Both what? Giving the claimant an opportunity to present new evidence and new facts to help his case, as well as being mindful of the district court order. That wasn't the mandate at all. The mandate asked for two things. Number one, reasons why you rejected the treaty position. And number two, for records, which were, there was no records given. Those were the two problems. But the ALJ went further. And the ALJ goes into all of these other things, deciding it's not medium, it's mild, et cetera. There's nothing in the mandate that gives him power, him or her power to do that. Why isn't the service at fault here for violating the mandate? Your Honor, the district court determined that the ALJ did not violate the mandate and that any changes were harmless in that the issues did not change, the outcome of the case did not change. Well, that's right. The ALJ, the district court said there's no reversible error. But that's not my question. Why does the service take the position that they shouldn't follow the specific mandate from the district court? Why does the service go on its own and decide it's going to thumb its nose at the district court and do what it wants to do? Your Honor, I don't believe that the ALJ thumbed his nose at the mandate. The ALJ did comply with the mandate, as Judge Chesney found, who issued the order. But then went on to do other things for which it had no power? The mandate did not preclude the ALJ from taking other steps. You mean the district judge says I want one and two and I mean it, or one and two and no further? I thought if a district court said I want one and two, that indicates how much further you can go. The judge also said that if there were changes in the record, that perhaps new vocational expert testimony would be needed. So the judge ---- I saw the last paragraph of the order, and I don't find that. In the earlier order. Okay. Now, let's assume for the moment that everybody's, you know, and we do, everybody's acting in good faith. And so, and you tell us that's the policy. And you would agree, I guess, with the claimants' counsel that the ALJ pushed the reset button, to use the phrase, right? Started afresh. New hearing, new evidence, right? Mindful of the district court's remand order, yes, Your Honor. Right. So then the district court gets a backup. And let's just ---- I accept your position. The district court says, well, you didn't really violate the mandate, and you went on to find it. Why shouldn't the district court at that point, if the district court has concluded the mandate hasn't been violated, and a new hearing's been held, to apply the normal standards of reviewing an order? Because what the district court did in this case is to say, yeah, I don't see much new. What the district court didn't do is to go through a thorough, complete analysis that one would do in seeing a new order. So if, in fact, you're starting over and everybody agrees it's okay, don't you think the district court has to look at it under the standards of review that we require? I believe that the district court did, and there's no evidence opposite that. In the final order issued by Judge Chesney, in a footnote, she says that the court does not accept, nor did the court accept without evaluation the reasons provided by the ALJ in complying with the court's order. That's in the footnote of the document 22, the final order entering summary judgment. Right. But I would say that her last decision is a little shorter than her first. Footnote 3 on page 4. No, Your Honor. This is the final order entering summary judgment. It's document 22 of the docket. It's dated March 26, 2008. I'm sorry. We don't go by docket numbers. The order directing plaintiff to show cause why summary judgment should not be entered? No, Your Honor. Then there was the final order in this matter. Oh, you're talking about the one that says harmless error in the footnote? It starts out contrary to plaintiff's argument. Yes. So one page final order. Page what of the final order? Right. Do you know what page that is of the, of your transcript? Page 7 of the excerpts of record. Page 7 of the excerpts of record. Thank you, counsel. Right. But that's not, I mean, I don't want to quibble with you, but that's not, that footnote is a far cry from what we would usually see in a thorough district court analysis of an ALJ opinion. It just says, well, things could have changed. The plaintiff might have been hit by a bus. But, I mean, that's a phrase used by the district court, not by me. But the record is essentially unchanged. Well, that's not true. Yes, Your Honor. But that doesn't mean that Judge Chesney did not review the record. My position is that in finding no fault, no cause for remand, the judge then affirmed the commissioner's decision. And I don't believe there's any evidence to the contrary on that. Okay. Thank you, Your Honor. Thank you. No, I'm sorry. Excuse me. Don't run away yet. I'm sorry, sir. What did you think of the, of the district court's determination that there may have, the ALJ may have been doing something that shouldn't have been done, but there's no harm? Yes, Your Honor. That is, is, is that, I haven't seen that before. Is that something that we use in the ALJ when the district, when the district court does not give a full review? That, that if it's a lack, no harm, no foul rule? I believe what, what happened was the ALJ changed the degree of the impairment from mild degree to, or from moderate degree to a mild degree. However, those, those types of descriptions are used to determine whether the impairment is a severe impairment. And in this case, under both scenarios, it was found to be a severe impairment. So that did not change and the error was harmless. So it did not lessen the burden of proof that the claimant had. She kept it with moderate rather than mild. There, there was absolutely no prejudice to the claimant in that respect. That's what she meant by no harm. I believe so, Your Honor. Okay. Anything else? No, thank you. Thank you. Your Honor, just a few brief points. In response to Judge Wallace's earlier question about what the ALJ could do after remand, in my brief I refer to both scenarios where a case is remanded by the appeals council and a case is remanded by the district court. Those regulations as I read them don't necessarily say the administrative law judge above and beyond complying with a mandate cannot also address additional evidence and new issues. And here what's interesting is that when the case was first remanded by the district court, Judge Jesny said that Pugh was clearly prejudiced by the absence of counsel and she wanted to give him an opportunity to fully develop the record. That original order of remand did not say to me that I could only submit evidence that dealt with those two issues. She simply said he was to be provided with a full opportunity to develop a full record. And when that evidence was submitted, the ALJ ran with it and issued a completely new decision. Again, if he felt duty-bound to only address those two issues, he could have said as much. He did not. And once he did that, all of his findings were subject to review, not simply the two issues that constituted the basis for remand. My second point, the error was indeed beyond harmless, consistent with the court's decision in Stout. Because I submitted three reports from three different vocational experts who all said that based on a moderate restriction, Pugh could not do any of the jobs that the vocational expert at the second hearing had said that he could do. And because of that, if the district court would have, number one, respected the earlier finding of moderate and, number two, evaluated those three reports, he would have been found disabled. Thank you, Your Honors. Thank you very much for your arguments. It's an interesting case, and I know you've been at it a long time. So we will deem the matter submitted and try to get you a decision as soon as we can.
judges: Wallace, Thompson, Thomas